UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOMMY JOE HOLMES,<br><br>    Plaintiff,<br><br>    v.<br><br>A. K. SCRIBNER, et al.,<br><br>    Defendants.<br>_____/ | CASE NO. 1:09-cv-00245-AWI-GBC (PC)<br><br>FIRST AMENDED COMPLAINT DISMISSED WITH LEAVE TO AMEND<br><br>(ECF No. 15)<br><br>SECOND AMENDED COMPLAINT DUE WITHIN THIRTY DAYS |

**SCREENING ORDER**

**I.**    **PROCEDURAL HISTORY**

Plaintiff Tommy Joe Holmes ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on February 2, 2009. (ECF No. 1.) Plaintiff's original complaint was dismissed with leave to amend for failure to state a cognizable claim. (ECF No. 10.) Plaintiff filed a First Amended Complaint on March 16, 2011. (ECF No. 15.) No other parties have appeared.

It is this First Amended Complaint that is now before the Court for screening. For the reasons set forth below, the Court finds that Plaintiff has again failed to state any claims upon which relief may be granted.

**II.**    **SCREENING REQUIREMENTS**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has

raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 129 S.Ct. at 1949.

### III.     SUMMARY OF COMPLAINT

Plaintiff alleges violations of his Eighth, Fourteenth, and First Amendment rights. Plaintiff names the following individuals as Defendants: A. K. Scribner, D. Stockman, D. Sheppard-Brooks, M. E. Poulos, R. R. Lowden, N. Dill, V. Garcia, W. J. Hill, H. Cervantez, A. Pyle, T. Banks, and C. Cortez.

Plaintiff alleges as follows: On March 29, 2004, Plaintiff was placed in administrative segregation ("ad-seg") and given a copy of the ad-seg placement order which claimed that Plaintiff had conspired to murder/assault prison officials. On April 5, 2004, Plaintiff was brought before Defendant Lowden for ad-seg placement review on the charge of conspiracy to assault a prison official. On April 7, 2004, Plaintiff appeared before the institution classification committee ("ICC") for the initial review of his ad-seg placement. ICC retained Plaintiff in ad-seg pending an investigation, to be reviewed again in 90 days by the classification staff representative. On April 12, 2004, Plaintiff was again brought before Defendant Lowden for ad-seg placement review and he received a copy of the

confidential report identifying him in the conspiracy to murder. On April 13 and July 14, 2004, Plaintiff again appeared before the ICC for a review of his ad-seg placement. ICC again retained Plaintiff in ad-seg pending an investigation, to be reviewed again in 90 days by the classification staff representative.

On August 17, 2004, the investigation was complete. On October 20, 2004, Plaintiff appeared before the ICC for review of a charge of threatening staff and transfer consideration.[1] On November 5, 2004, Plaintiff was issued an ad-seg placement order authored by Defendant Hill, which stated that Plaintiff had been found guilty of attempted murder on a peace officer. On November 10, 2004, Plaintiff again appeared before the ICC for review of his placement for threatening staff/transfer consideration.

Plaintiff was retained in ad-seg for approximately one year.

Plaintiff seeks injunctive relief, compensatory, punitive, and declaratory damages, attorney fees, and costs.

## IV.  ANALYSIS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).

### A.  Due Process

Plaintiff alleges that his due process rights were violation by Defendants.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a

---

[1] This appears to be a different charge than the assault/murder charge as the threatening charge appears to have occurred in 2003.

3

cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483–84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

Where prison conditions are at issue, a change in conditions so severe as to affect the sentence imposed in an unexpected manner implicates the Due Process Clause itself, whether or not such change is authorized by state law. Id. at 484. Neither changes in conditions relating to classification and reclassification nor the hardship associated with administrative segregation, such as loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time, violate the Due Process Clause itself. See Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (classification); Toussaint v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir. 1986) (administrative segregation).

Additionally, the decision to confine an inmate to administrative confinement only requires "some evidence" in support of the decision. Toussaint, 801 F.2d at 1105. When an inmate is confined to administrative segregation due process requires that he be informed of the charges against him or the reason for his segregation, an informal nonadversary hearing must be held within a reasonable time, and the inmate must be allowed to present his views. Id. at 1100.

Plaintiff again fails to allege sufficient facts to state a cognizable due process claim. Plaintiff states that he was never charged or found guilty of a rule violation and that he was held in administrative segregation for a year without due process of law. Plaintiff also claims that the provisions of Title 15 of the California Code of Regulations and the California Administrative Code were violated because he did not receive notice of the evidence provided against him, did not receive an incident report, and did not receive notice of the violation.

Plaintiff's repeated allegations that he did not receive notice are contradicted by his

own statements in his statement of the facts as well as the documents he has attached to his Complaint.[2] Exhibit A states that Plaintiff received notice of the reasons for ad-seg placement on March 29, 2004, the date of his placement, and that he refused to sign it. (ECF No. 15, pp. 33-34; Pl.'s 1st Am. Compl. ex. A.) Exhibits B, C, D, G, & H state that Plaintiff received notice of the ICC hearings for review of his placement 72 hours before each hearing was held and that he refused to sign other notices. (Id. at 35-38, 40, 42, 48-50, 52; Id. at ex. B, C, D, G, H.) Exhibit I states that Plaintiff did not receive notice of several things. (Id. at 54; Id. at ex. I.) However, this appears to be in reference to the threatening staff charge.

It appears that there were perhaps some anomalies in Plaintiff's file; however, it does not appear that Plaintiff was deprived any of his due process rights. It appears from a cursory review of the remaining attachments that Plaintiff was present at his hearings, usually disagreed with the findings and conclusion, and was informed of his appeal rights. It also appears that he received notice of his hearings, and refused to sign the documents. Thus, Plaintiff has not stated a cognizable due process claim. Plaintiff is given leave to amend and attempt to state such a claim. Plaintiff must keep in mind the above stated legal standards. He must describe in greater detail what process he thinks he was deprived, how it was deprived, and attribute the deprivation to a named Defendant.

**B.    Retaliation**

Plaintiff states that he was being retaliated against by Defendants.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

---

[2] A Court may disregard factual allegations that are contradicted by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

5

It is difficult to determine what protected action Plaintiff alleges retaliation for. Plaintiff does state that he filed a grievance. However, it appears that this grievance was filed after the allegedly retaliatory adverse actions (false charges, deprivation of due process, and, ultimately, a transfer) occurred. As currently pleaded, the Court can not determine what, if any, protected conduct Plaintiff was attempting. The Court will give Plaintiff leave to amend this claim. In the amended complaint, Plaintiff should keep in mind the following standards.

A grievance is a protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). Being transferred is an adverse action sufficient to meet the standard. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). Here, Plaintiff fails to allege that he was performing some kind of protected conduct.

The second element of a prisoner retaliation claim focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Morgan, 874 F.2d at 1314). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent"). Here, Plaintiff fails to allege any facts related to causation or motive. Plaintiff also fails to attribute the retaliation to a named Defendant.

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).

Here, the alleged actions of Defendants would chill or silence a person of ordinary firmness from pursuing First Amendment activities. Thus, Plaintiff has met the fourth prong for a retaliation claim.

With respect to the fifth prong, a prisoner must affirmatively allege that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). This is not a high burden to reach. See id. (prisoner's allegations that search was arbitrary and capricious sufficient to satisfy this inquiry). Plaintiff does not address this prong at all. However, it appears to the Court that the determination that Plaintiff was a threat to the safety of the institution could be a legitimate penological basis for a transfer.

As stated, Plaintiff has failed to satisfy all elements of a retaliation claim. Plaintiff will be given one additional opportunity to amend to attempt to state such a claim.

### C.  Cruel and Unusual

Plaintiff alleges that he was subjected to cruel and unusual punishment during his placement in ad-seg because he was only allowed out of his cell for three hours a day and was not allowed outdoor exercise, sunshine, or fresh air.

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). Prison officials therefore have a "duty to ensure that prisoners are provided with adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted). To establish a violation of this duty, a prisoner must satisfy both an objective and subjective component. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). First, a prisoner must demonstrate an objectively serious deprivation, one that amounts to the denial of "the minimal civilized measures of life's necessities ." Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996) (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)). In determining whether a deprivation is sufficiently serious, a court must

1 consider "the circumstances, nature, and duration" of the deprivation. Johnson, 217 F.3d
2 at 731. "The more basic the particular need, the shorter the time it can be withheld."
3 Hoptowit v. Ray, 682 F.2d 1237, 1259 (9th Cir. 1982).

4     Second, a prisoner must also demonstrate that prison officials acted with a
5 sufficiently culpable state of mind, that of "deliberate indifference." Wilson, 501 U.S. at
6 303; Johnson, 217 F.3d at 733. A prison official is liable for denying an inmate humane
7 conditions of confinement only if "the official knows of and disregards an excessive risk to
8 inmate health and safety; the official must both be aware of facts from which the inference
9 could be drawn that a substantial risk of serious harm exists, and he must also draw the
10 inference." Farmer, 511 U.S. at 837.

11     Plaintiff alleges that Defendants Scribner, Stockman, Sheppard-Brooks, Poulos,
12 Lowden, Dill, Garcia, Hill, Cervantez, Pyle, Banks, and Cortez violated his Eighth
13 Amendment rights by depriving him of outdoor exercise, fresh air, and sunlight. Plaintiff
14 states that he was confined to his cell for 22 hours a day for months. He claims that this
15 and his isolation caused him to suffer mental anguish, emotional distress, insomnia,
16 muscle atrophy, fatigue, stomach and lower back pain, loss of appetite, and hallucinatory
17 symptoms.

18     "[S]ome form of regular outdoor exercise is extremely important to the psychological
19 and physical well being of [a prisoner]." Spain v. Procunier, 600 F.2d 189, 199 (9th Cir.
20 1979). Thus, depriving a prisoner of outdoor exercise for extended, continuous periods of
21 time may constitute a violation of the Eighth Amendment. See Lopez v. Smith, 203 F.3d
22 1122, 1132-33 (9th Cir. 2000) (complete denial of outdoor exercise for six and a half weeks
23 satisfies the Eighth Amendment's objective requirement); Keenan v. Hall, 83 F.3d 1083,
24 1089 (9th Cir. 1996) (defendants not entitled to summary judgment where prisoner
25 produced evidence showing a deprivation of outdoor exercise for a six month period).

26     Plaintiff makes one statement that he was deprived outdoor exercise. He fails to
27 describe this allegation sufficiently for the Court to make a determination. Plaintiff does not
28 state for how long he was deprived outdoor exercise, if it was a continuous deprivation,

nor does Plaintiff explain how the Defendants listed above are responsible for this conduct. Thus, this claim fails. Plaintiff will be given leave to amend and attempt to state such a claim.

### D. Personal Participation and Supervisory Liability

Plaintiff does not include several of the named Defendants in the statement of the case. Plaintiff could be arguing that some of these Defendants are liable for the conduct of his or her subordinates as they were not present and did not participate in the complained of conduct as currently described by Plaintiff.

Under Section 1983, Plaintiff must demonstrate that each named Defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. Iqbal, 129 S.Ct. at 1949. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Id. at 1948. Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Id. at 1948-49.

When examining the issue of supervisor liability, it is clear that the supervisors are not subject to vicarious liability, but are liable only for their own conduct. Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001); Wesley v. Davis, 333 F.Supp.2d 888, 892 (C.D.Cal. 2004). In order to establish liability against a supervisor, a plaintiff must allege facts demonstrating (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Jeffers, 267 F.3d at 915; Wesley, 333 F.Supp.2d at 892. The sufficient causal connection may be shown by evidence that the supervisor implemented a policy so deficient that the policy itself is a repudiation of constitutional rights. Wesley, 333 F.Supp.2d at 892 (internal quotations omitted). However, an individual's general

responsibility for supervising the operations of a prison is insufficient to establish personal involvement. Id. (internal quotations omitted).

Supervisor liability under Section 1983 is a form of direct liability. Munoz v. Kolender, 208 F.Supp.2d 1125, 1149 (S.D.Cal. 2002). Under direct liability, Plaintiff must show that Defendant breached a duty to him which was the proximate cause of his injury. Id. "'The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson v. Duffy, 588 F.2d 740, 743-744 (9th Cir. 1978)). However, "where the applicable constitutional standard is deliberate indifference, a plaintiff may state a claim for supervisory liability based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by others." Star v. Baca, ___ F.3d ___, 2011 WL 477094, *4 (9th Cir. Feb. 11, 2011).

Plaintiff has not alleged facts demonstrating that all of the named Defendants personally acted to violate his rights. Plaintiff needs to specifically link each Defendant to a violation of his rights. Plaintiff shall be given one additional opportunity to file an amended complaint curing the deficiencies in this respect.

**V.      CONCLUSION AND ORDER**

The Court finds that Plaintiff's First Amended Complaint fails to state any Section 1983 claims upon which relief may be granted. The Court will provide Plaintiff time to file an amended complaint to address the potentially correctable deficiencies noted above. See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). In his Amended Complaint, Plaintiff must demonstrate that the alleged incident or incidents resulted in a deprivation of his constitutional rights. Iqbal, 129 S.Ct. at 1948-49. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Plaintiff must also demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiff should note that although he has been given the opportunity to amend, it

is not for the purposes of adding new defendants or claims.  Plaintiff should focus the amended complaint on claims and defendants relating solely to issues arising out of the issues described herein.

       Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

       Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed for failure to state a claim, with leave to file an amended complaint within thirty (30) days from the date of service of this order;

2. Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:09-cv-245-AWI-GBC (PC); and

3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated:   May 10, 2011

                                          UNITED STATES MAGISTRATE JUDGE